## TUNNELL et al. v. MOORE et al.
### No. 11052.

Court of Civil Appeals of Texas. Dallas.
Sept. 24, 1932.

Rehearing Denied Oct. 22, 1932.

Will D. Pace and Butler, Price & Maynor, all of Tyler, for appellants.

Vinson, Elkins, Sweeton & Weems, and David T. Searls, all of Houston, for appellees.

JONES, C. J.

This suit was filed in the district court of Van Zandt county by a number of plaintiffs against a number of defendants in form of trespass to try title to thirty acres of land situated in said county, and described in the petition by metes and bounds. Appellants, H. B. Tunnell, W. W. Latham, and Dorothy Latham, minor daughter of W. B. Latham and suing through H. B. Tunnell as next friend, as alleged owners of a one-half interest in the land, filed a plea of intervention, also in form of trespass to try title. Appellants, as interveners, made the same parties defendant as the plaintiffs made in their petition. These parties, appellees herein, are: Otto Prassel, the Pure Oil Company, the Sun Oil Company, the East Texas Oil Corporation, and J. S. Kimbrough.

Each appellee, as defendant in the intervention filed by appellants, answered by a general demurrer, general denial, a plea of not guilty, a plea of the three, five, and ten year statutes of limitation, and a plea of innocent purchaser.

The trial court, on a joint motion of the parties, entered an order of severance of the case, as made by plaintiffs, from the case, as made by interveners, and gave to the case made by plaintiffs a separate docket number from the original docket number. The two cases were set for trial on the same day, and an agreed judgment for money damages was entered in favor of plaintiffs in their suit. After this agreed judgment was entered, appellants' case went to trial to a jury on the petition of intervention of appellants and the respective answers of appellees.

At the close of appellants' testimony, appellees filed a motion for an instructed verdict in their favor. This motion was granted and, on the instructed verdict, a judgment was entered against appellants and in favor of appellees. From this judgment appellants have duly perfected an appeal to this court and duly raised by proper assignments of error the questions herein discussed. The following are the facts:

Appellants' evidence shows that J. M. Tunnell acquired title to the land in controversy on September 29, 1896; that at this time J. M. Tunnell was a married man, and that the land was community property of himself and his wife; that in September, 1922, Mrs. J. M. Tunnell died, leaving as her only heirs at law the two children of her marriage, H. B. Tunnell and a daughter who married W. W. Latham; that the daughter, Mrs. W. W. Latham, died previous to the filing of this suit, leaving as her only heir at law a minor daughter, Dorothy Latham. The husband, J. M. Tunnell, is still living.

Appellees proved, on cross-examination of J. M. Tunnell, that in 1905 he had made an oral transfer of the land to J. J. Brawner, had received the purchase price, and delivered possession of the land. In reference to the oral sale, this witness stated: "I have forgotten, but there was a cause, a reason why the deed was not made, I don't know what, but there was a hitch, me and Jim Brawner agreed not to make any title at the present time. I wasn't living on it at the time I sold it to him. I had moved to Smith County." This witness also testified that neither he nor his wife during her lifetime asserted any claim or title to the land after this oral sale. This witness further testified that: "I signed a deed to this property in 1927, and at the time my wife had been dead since 1922, and I have never signed any other deed to this land that I have any knowledge of."

Appellants contend that, by this evidence, they made a prima facie case of their ownership of Mrs. J. M. Tunnell's community interest in the land, and that such prima face case was not overcome, as a matter of law, by appellees' attempted proof of an outstanding title in J. J. Brawner, either by the oral sale of the land, or by the fact that, in 1927, J. M. Tunnell signed a deed to the land in question.

Appellees contend that, while the evidence does not show that all of the necessary elements 'to consummate a valid parol sale is shown by the testimony, nevertheless, as appellants permitted evidence of a parol sale without objection, they cannot on appeal question the validity of such' sale; and they further contend that, in view of this parol sale and in view of the testimony that for some reason, not remembered by the witness, a deed was not executed at the time of the oral sale, it follows that the evidence of Tunnell that he signed a deed to the land must refer to the execution of a deed in conformity to the oral sale.

These two contentions present the one issue as to whether the evidence, as a matter of law, establishes an outstanding title to the land in Brawner. If the evidence does so establish this fact, then the court was warranted in giving peremptory instructions; if it does not, then the court committed reversible error in giving such instruction.

■ Our statute of conveyances is article 1288, R. C. S. 1925, and reads: "No estate of inheritance or freehold, or for a term of more than one year, in lands and tenements, shall be conveyed from one to another, unless the conveyance be declared by an instrument in writing, subscribed and delivered by the party disposing of the same, or by his agent thereunto authorized by writing."

Applying this statute to the instant case and excluding for the time being the evidence as to the signing of a deed to this land by H. B. Tunnell, twenty-two years after the oral sale, it is clear that the oral sale, though attended by the payment of the consideration and the surrender of possession of the land to the vendee, did not pass to such vendee title to the land, and that title remained in J. M. Tunnell. Courts of equity, however, have grafted onto this statute an exception and allow a valid oral sale of land under conditions, in which it is shown that an oral sale of land was made; that in pursuance of such sale the consideration was paid by the vendee to the vendor; that possession of the land was surrendered by the vendor to the vendee, and that such possession was followed by the making of valuable and permanent improvements by the vendee; or, in lieu of such improvements, other facts existed which would make the transaction a fraud on the vendee if the oral sale be not enforced. Hooks v. Bridgewater, 111 Tex. 122, 229 S. W. 1114, 1116, 15 A. L. R. 216; Bradley v. Owsley, 74 Tex. 71, 11 S. W. 1052; Robertson v. Simpkins, 61 Tex. 259; Cobb v. Johnson, 101 Tex. 440, 108 S. W. 811; Page v. Vaughan (Tex. Civ. App.) 173 S. W. 541; Wells v. Foreman (Tex. Civ. App.) 199 S. W. 1174; Bringhurst et al. v. Texas Co. et al., 39 Tex. Civ. App. 500, 87 S. W. 893.

■ While in the instant case the evidence shows an agreed oral sale, the payment of the consideration, and possession under such sale, it fails to show any valuable and permanent improvements made by the vendee on the faith of the oral sale, and therefore falls short of showing a valid oral sale of the land. On this question, Chief Justice Phillips, speaking for the Supreme Court, in Hooks v. Bridgewater, supra, says: "From an early time it has been the rule of this court, stead-

ily adhered to, that to relieve a parol sale of land from the operation of the statute of frauds, three things were necessary: 1. Payment of the consideration, whether it be in money or services. 2. Possession by the vendee. And 3. The making by the vendee of valuable and permanent improvements upon the land with the consent of the vendor; or, without such improvements, the presence of such facts as would make the transaction a fraud upon the purchaser if it were not enforced. Payment of the consideration, though it be a payment in full, is not sufficient. This has been the law since Garner v. Stubblefield, 5 Tex. 552. Nor is possession of the premises by the vendee. Ann Berta Lodge v. Leverton, 42 Tex. 18. Each of these three elements is indispensable, and they must all exist."

■ What is meant by the phrase "an outstanding title in a third party" when used in this character of suit? We think it necessarily means such a title as that such third party could recover the land from either party in a trespass to try title suit. 6 Words and Phrases, First Series, p. 5123; 9 R. C. L. p. 871; Shields v. Hunt, 45 Tex. 424, 428. Appellees did not show such outstanding title in Brawner by the proof made of the oral sale.

■ Then again, a title resting in an oral sale of land is an equitable title, and under the following authorities, before such title will become an effectual bar to appellants' suit, appellees must connect themselves therewith: Shields v. Hunt, supra; Trimble v. Burroughs, 52 Tex. Civ. App. 266, 113 S. W. 551; Capt v. Stubbs, 68 Tex. 222, 4 S. W. 467; Johnson's Adm'r v. Timmons, 50 Tex. 521; Fitch v. Boyer, 51 Tex. 336. Appellees offered no evidence showing their connection with the Brawner title, even if there had been such title in Brawner to the land.

■ When appellees undertook the defense of proving an outstanding title in a third person, it was necessary for such defense that they prove such title by legal and competent evidence, and the fact that appellants entered no objection to the evidence offered in the attempt of appellees to prove the outstanding title by parol sale availed appellees nothing. The failure to object to the evidence did not establish for appellees a valid title resting in parol.

■ Does the evidence of J. M. Tunnell, to the effect that he signed the deed to the property in question in 1927, conclusively establish the fact that such deed was executed and delivered to the vendee? Under the statute of conveyances, above quoted, no valid conveyance of land exists unless the instrument conveying the land is in writing and subscribed and delivered by the vendor to vendee. This evidence does show that a deed to the property was signed by the vendor, but

does not show delivery to the vendee, a necessary element for the conveyance of land in this state. The trial court was not warranted in assuming, as a matter of law, that such delivery was made, for at most the evidence only raises a jury question as to the delivery of the deed.

■ By supplemental brief, filed in this court September 20, 1932, three days after the submission of the case, appellees urge that the petition is fatally defective, in that appellants are suing as heirs of Mrs. J. M. Tunnell, deceased, and do not allege that no administration of the estate of deceased had been had, and that none was necessary. This supplemental brief was filed without an order of this court permitting its filing, and under rule 37 governing this court it cannot be considered. However, if this question had been properly presented to this court, we do not think under the particular facts of this case the rule of law invoked should be given application. Richardson et al. v. Vaughan et ux., 86 Tex. 93, 23 S. W. 640; Laas v. Seidel, 95 Tex. 442, 67 S. W. 1015; and a number of other cases, announce the rule that, when heirs of either resident or nonresident decedent seek by suit to recover assets of an ancestor, they must plead and prove either that there is no administration upon the estate, and no need of any, or that the administration has been had and closed. This rule, however, is not universally applied, but has been subjected to exceptions in particular cases. Richardson v. Vaughan, supra; Walker v. Abercrombie, 61 Tex. 69. While the facts of the reported cases, allowing exceptions, are not similar to the facts of the instant case, yet we think that the principle upon which they are decided applies.

The petition of intervention was filed January 6, 1931, more than eight years after the death of Mrs. J. M. Tunnell, and more than four years after the statutory time within which administration on deceased's estate could have been begun. An administration is primarily for the benefit of the creditors of a deceased's estate. There is no direct evidence that any administration had been taken out on Mrs. Tunnell's estate, but the facts of this case clearly negative the idea that there had been any such administration. Under the statute fixing the period of four years as the limit for beginning administration for the benefit of creditors, and this period having long since elapsed, it is conclusively presumed that no creditors of Mrs. Tunnell's estate existed at the time of her death, and therefore no administration was necessary. The reason for the rule requiring such an allegation, in a petition by heirs to recover property from a deceased ancestor, is that, while on the death of the ancestor such property descended to the heirs, it is charged with the debts of the ancestor, for which reason the petition of such heirs suing for the prop-

erty should show by proper allegation that the property for which they sue is owned exclusively by them and is not subject to any indebtedness of their decedent.

The petition of intervention is in the form of trespass to try title, and only alleges the ownership of the land in controversy in appellants as interveners, and does not affirmatively show how title to the land became vested in appellants, or that they are suing as heirs of a decedent. The proof offered by appellants does show that their claim of ownership rested entirely on the fact that they were the heirs of Mrs. Tunnell. Their plea of intervention authorized this proof. If it should be held necessary to show by proof that no administration was had on Mrs. Tunnell's estate, and that none was necessary, there is shown a clear implication from the facts in evidence that no administration was taken out, and a conclusive presumption that none was necessary. We therefore hold that, if this issue had been properly presented by appellees, there is no merit to such contention.

It necessarily follows that the trial court erred in peremptorily instructing the jury in favor of appellees, and that this case must be reversed and remanded.

Reversed and remanded.